**HENDERSON et al. v. MAINARD et al.**

No. 10207—Opinion Filed July 19, 1921.

Rehearing Denied Aug. 26, 1921.

Application to File Second Petition for Rehearing. Denied Jan. 17, 1922.

(Syllabus.)

**1. Lis Pendens—Title of Pendente Lite Purchaser.**

The theory of lis pendens is to keep the subject-matter of controversy within the power of the court until the final judgment is rendered, so that the judgment, when rendered, may be effective. A party to the litigation cannot transfer the property in issue so as to prejudice the rights of the plaintiff therein. The title of a pendente lite purchaser is not necessarily void. As between the parties to the transfer, the title is valid, but, as to the pendente lite purchaser, its validity depends entirely on the result or outcome of the pending litigation. While the purchaser must take notice of the facts contained in the record, he is only affected to the extent to which the judgment in the suit goes.

**2. Parent and Child—Contracts Between—Scrutiny of Equity.**

The jealousy with which courts of chancery watch contracts made by parents with children, is laid down with terseness and much accuracy by Mr. Justice Story in his lecture on Constructive Frauds. He says: "The natural and just influence which a parent has over a child, renders it peculiarly important for courts of justice to watch over and protect the interests of the latter; and therefore all contracts and conveyances, whereby benefits are secured by children to their parents, are objects of jealousy; and if they are not reasonable under the circumstances, they will be set aside."

**3. Appeal and Error—Review—Sufficiency of Evidence.**

In an action at law, the judgment of the trial court should be sustained if there is competent evidence which reasonably tends to support it, though based on conflicting testimony; and, in an action of equitable nature, the findings and judgment of the trial court will not be disturbed if the evidence reasonably tends to support the same, and they are not against the clear weight of evidence.

Error from District Court, Seminole County; Geo. C. Crump, Judge.

Action by J. L. Mainard and Bud Bowlegs against Rina Henderson and W. S. Livingston to cancel deed. Judgment for plaintiffs, and defendants bring error. Affirmed.

John W. Willmott and R. J. Roberts, for plaintiffs in error.

W. W. Pryor and W. N. Stokes, for defendants in error.

PITCHFORD, J. On August 13, 1917, J. L. Mainard and Bud Bowlegs, defendants in error, plaintiffs below, filed a petition in the district court of Seminole county, Oklahoma, against Rina Henderson, plaintiff in error, defendant below, who was afterwards joined as a defendant by W. S. Livingston on his own motion. The parties will be referred to, respectively, as they appeared in the trial court.

Bud Bowlegs, a member of the Seminole Tribe of Indian, had received as his allotment the 60 acres of land in controversy, the same being the northeast quarter of the southeast quarter, and the east half of the northwest quarter of the southeast quarter, of section eight (8), township ten (10), range six (6) east. It appears that Bud Bowlegs was two years of age at the time he was enrolled by the Dawes Commission, the first of July, 1898. Rina Henderson, one of the defendants, was the mother of Bud Bowlegs. Bud Henderson, the husband of Rina, and the stepfather of Bud Bowlegs, was the guardian of Bud Bowlegs. On the 10th day of May, 1917, Bud Bowlegs, having reached his majority, executed a warranty deed to his mother, Rina Henderson, covering the land in controversy. Thereafter, on August 11th, in consideration of the sum of $750, he executed a warranty deed to the same lands to the plaintiff J. L. Mainard. Two days later after the institution of this action he executed to his mother, Rina Henderson, another deed to the same land, the consideration expressed in the last deed being "love and affection". On August 20, 1917, Rina Henderson, in consideration of the sum of $2,000, executed a deed to W. S. Livingston, covering the allotment of August Bowlegs and the allotment of Bud Bowlegs. One thousand two hundred dollars of this consideration was paid by W. S. Livingston at the time of the execution of the deed; a check for $800, being the balance of the consideration, was delivered to Mr. Willmott to be held in escrow awaiting the determination of this action. It appears that this check was afterwards returned to Livingston. A jury was waived and the cause submitted to the court.

After the conclusion of the evidence, the court found that the conveyance of May 10, 1917, to Rina Henderson, was without consideration; that the one-dollar consideration mentioned therein had not been paid; that the deed was executed for the purpose of holding the land in the name of Rina Henderson, so as to keep Bud Bowlegs from convey-

ing the same to other parties, and that the transaction was not intended as a sale or gift within the meaning of legal conveyances. The court further found that the plaintiff Mainard knew all the conditions surrounding this deed at the time he purchased the land, and that the consideration paid by Mainard was a reasonable and fair consideration. The judgment was rendered canceling the deeds from Bud Bowlegs to Rina Henderson, and the deed from Rina Henderson to W. S. Livingston, and quieting the title of the plaintiff Mainard.

While there are numerous errors assigned for reversal of the judgment of the lower court they all revolve around the deed of May 10, 1917, executed by Bud Bowlegs to his mother, Rina Henderson. If this deed is valid, then Bud Bowlegs had parted with all interest in the land, and it would follow that his deed to Mainard would be void. On the other hand, if the deed of May 10th is invalid, then the judgment of the trial court should be affirmed.

There is no question of an innocent purchaser involved in the case. If the deed of May 10th should be canceled, it would follow, naturally, that the defendant Livingston could obtain no rights by reason of his purchase from Rina Henderson; Livingston buying after the institution of this action, which was instituted for the purpose of canceling this deed. Livingston could claim no greater rights than Rina Henderson could; that is, if Rina Henderson had no title, then she could convey none to her codefendant, Livingston.

In Baker v. Leavitt, 54 Okla. 70, 153 Pac. 1099, the court said:

"One who purchases real property from a party to an action involving the title thereto, after the institution and during the pendency of such action, is bound by the judgment rendered therein against his grantor, and acquires no greater rights than his grantor." Citing a long list of authorities.

In Guaranty State Bank of Okmulgee v. Pratt et al., 72 Oklahoma, 180 Pac. 376, it is said:

"The theory of lis pendens is to keep the subject-matter of controversy within the power of the court until the final judgment is rendered, so that the judgment, when rendered, may be effective. A party to the litigation cannot transfer the property in issue so as to prejudice the rights of the plaintiff therein. The title of a pendente lite purchaser is not necessarily void. As between the parties to the transfer, the title is valid, but as to the pendente lite purchaser, its validity depends entirely on the result or outcome of the pending litigation. While the purchaser must take notice of the facts contained in the record, he is only affected to the extent to which the judgment in the suit goes."

It is the contention of plaintiffs in error that the deed of May 10th conveyed title to Rina Henderson; that the consideration of one dollar expressed in the deed was a sufficient consideration. The further contention is that, if this deed did not operate as a sale, then it should operate as a gift. As we have seen, the trial court found that the consideration of one dollar had not been paid. In fact, that there was no consideration whatever passing from the grantee to the grantor. If this should be regarded as an action at law, then the judgment of the trial court should be sustained if there was competent evidence which reasonably tends to support it, though based on conflicting testimony; and, if the action should be construed to be one of an equitable nature, then the findings and judgment of the trial court should not be disturbed if the evidence reasonably tended to support the same, and they are not against the clear weight of evidence. Mitchell et al. v. Gafford, 73 Oklahoma, 175 Pac. 227; Scott v. Iman et al., 74 Oklahoma, 176 Pac. 81; Elliott v. Bond, 72 Oklahoma, 176 Pac. 242; Bruner v. Oswald et al., 72 Oklahoma, 178 Pac. 693.

If Bud Bowlegs had instituted this action, as sole plaintiff, against Rina Henderson, as sole defendant, for the purpose of canceling the deed, we cannot conceive, under the evidence adduced, how any court of equity would hesitate to cancel the same. The evidence of Mr. Hart, who was county judge of Seminole county at the time, is that Rina Henderson, Bud Henderson, her husband, and Bud Bowlegs, were in his office, and that Rina Henderson stated to Mr. Hart that she was afraid that Bud Bowlegs would fool away his land when he became of age; that she had him to make a deed to her for the land. She further stated that she had not bought and paid for it, but just merely clouded the title to make it appear that he had sold the land to her, so that others would be afraid to buy it from Bud. Bud Bowlegs testified that he had not sold the land to his mother, and that she had never paid him anything for it; and further, that, at the time of the sale to Mr. Mainard, he explained to Mainard that the deed he had executed to his mother was simply made to keep others from getting the land. Also, that he promised Mr. Mainard to join with him in an action to clear the title, or that he would get a quitclaim deed from his mother and straighten up the title; and that, before this action was brought, he went to the attorney of the plaintiff and requested that he be

joined with Mainard in an action to cancel the deed of May 10th.

The defendant Livingston had leased, for the year of 1917, not only the land in controversy, but also the allotment of August Bowlegs, deceased, the brother of Bud Bowlegs, and the child of Rina Henderson. Upon the death of August Bowlegs, his allotment ascended to his mother, Rina Henderson. On July 1, 1917, almost two months after Rina Henderson had taken her deed from Bud Bowlegs, Livingston, who was a tenant, paid $50 as rents on the allotment of Bud Bowlegs and August Bowlegs. Half of this sum was paid to Rina Henderson, evidently, for the August allotment, and $25 was paid to Bud Henderson, as the guardian of Bud Bowlegs; and, in his report to the county judge, the guardian reported the receipt of this $25. If, at that time, Rina Henderson had bought the land in good faith, and thought that she was the owner thereof, the question naturally arises, why she only received one-half of the rents?

Another rather significant circumstance is in procuring another deed two days after the institution of this action. Her act in taking the last deed is in keeping with her statement to Judge Hart, which in effect amounted to a declaration on her part that no title was intended to be conveyed by the deed of May 10th.

In J. I. Case Threshing Mach. Co. et al. v. Walton Trust Co. et al., 39 Okla. 748, 136 Pac. 769, it is said:

"Although the deed executed by the bank to Edmonds purports on its face to be a warranty deed, conveying the absolute title, yet having been made wholly without consideration by a corporation to one of its officers for the corporation's benefit, while no writings were entered into declaratory of the terms and conditions and the purposes for which the conveyance was made, it is clear that it was not intended by the deed to convey to the grantee the absolute title or to vest in him a beneficial interest in said lands, but instead to convey a naked legal title."

In Jenkins et al. v. Pye et al., 12 Pet. 241, 9 L. Ed. 1070, Mr. Justice Catron wrote the concurring opinion, in which he used the following language:

"The jealousy with which courts of chancery watch contracts made by parents with children, is laid down with terseness and much accuracy by Mr. Justice Story in his lecture on Constructive Frauds. He says: 'The natural and just influence which a parent has over a child, renders it peculiarly important for courts of justice to watch over and protect the interests of the latter; and therefore all contracts and conveyances, whereby benefits are secured by children to their parents, are objects of jealousy; and if they are not reasonable under the circumstances, they will be set aside.' "

The evidence fails to show any of the elements of a gift in this case. In order to constitute a gift, there must be an intention on the part of the donor to make a gift. There is sufficient evidence to sustain the findings of the trial court, that the land in controversy was not given by Bud to his mother; that no title passed by reason of the deed of May 10th, and no consideration was paid.

The next contention of the defendants is that the deed from Bud Bowlegs to his codefendant, Mainard, was in violation of section 2260, Revised Laws of 1910, which is as follows:

"Any person who buys or sells, or in any manner procures, or makes or takes any promise or covenant to convey any pretended right or title to any lands or tenements, unless the grantor thereof, or the person making such promise or covenant has been in possession, or he and those by whom he claims have been in possession of the same, or of the reversion and remainder thereof, or have taken the rents and profits thereof for the space of one year before such grant, conveyance, sale, promise or covenant made, is guilty of a misdemeanor."

When Bud Bowlegs, on May 10, 1917, executed the deed to Rina Henderson, his mother, he was in possession by a tenant, who was holding under a lease obtained from the guardian of Bud Bowlegs; and when Bud Bowlegs reached his majority, then the party in possession, under the lease, became his tenant by operation of law, and the tenant's possession was his possession. And we see that, on July 1, 1917, when Livingston, the tenant, paid the rents, to wit, $50, one-half of the same was paid to Rina Henderson, who owned the August allotment, and the other one-half was paid to the guardian of Bud Bowlegs. Under this situation, Bud Bowlegs had taken the rents and profits of the land for the space of one year before the execution of the deed to Mainard. Therefore, the statute against champerty has no application.

Evidence examined, and found amply sufficient to sustain the judgment of the trial court, and the same is affirmed.

KANE, JOHNSON, ELTING, and NICHOLSON, JJ., concur.