Note.—See under (1) 40 Cyc. pp. 2493, 2501; 28 R. C. L. p. 607; 3 R. C. L. Supp. p. 1585.

---

## HIVICK v. HEMME.

No. 16158—Opinion Filed March 16, 1926.

Rehearing Denied July 6, 1926.

**1. Trusts—Express Trust Unexecuted—Liability of Trustee for Trust Fund.**

One who receives a fund as trustee of an express trust and has not spent it for the trust purposes is treated as if the fund were still in his hands, and he cannot say it is not. If such trustee breaches his trust by expending the fund otherwise than in execution of the trust, his personal liability to the trustors is a simple contract equitable debt.

**2. Same—Trustee Cannot Set Up Own Breach—Constructive Fraud.**

Breach of trust is a wrong, and a constructive fraud arises upon such breach of trust. A trustee cannot take advantage of his own wrong by setting up his own breach of trust.

**3. Limitation of Actions—Trusts—Unequiv-
ocal Repudiation of :Trust Necessary to
Start Running of Statute Against En-
forcement of Express Trust.**

Where a trustee accepts a fund on an ex-
press agreement to expend same for speci-
fied purposes, his holding of the fund, after
failure to execute the trust, can be converted
into one adverse to the trustors, starting lim-
itation against a suit to recover the fund,
only by a clear and unequivocal declaration
of such intention brought home to plaintiff.

**4. Disposition of Cause.**

Under the foregoing rules, the court erred
as to a pure unmixed question of law in
granting new trial to defendant, and in set-
ting aside verdict for plaintiff, no discretion
of the court being involved therein.   The
cause is accordingly reversed for judgment
for plaintiff. .

(Syllabus by Estes, C.)

Commissioners' Opinion, Division No. 2.

Error from District Court, Payne County;
Charles C. Smith, Judge.

Action by L. C. Hivick against F. M. Hem-
me.   Judgment for plaintiff, and from or-
der setting aside the verdict and granting
new trial, plaintiff appeals.   Reversed.

Giddings & Giddings and Geo. H. Gid-
dings, Sr., for plaintiff in error.

John P. Hickam, for defendant in error.

Opinion by ESTES, C.   Parties appear
here in the same order as in the trial court.
The Producers Lead & Zinc Company, a cor-
poration, had constructed a mill for mining
lead and zinc on its property, plaintiff being
an officer and director, and defendant a
stockholder.   On May 19, 1919, the company
being largely indebted, the directors passed
a resolution providing that subscription be
circulated among the stockholders:

"To pay off certain indebtedness due the
McNeal Machine Company and the Landreth
Machine Company, and insurance and other
incidental indebtedness, the principal part
of which is secured by liens on certain of
the property of the company and which liens
are threatened to be foreclosed, it being un-
derstood that the persons who advanced any
money for the purpose of paying this in-
debtedness are to pay the same to F. W.
Hemme, and as soon as the full sum of $12,-
000 shall be paid to said trustee, the said
trustee shall discharge said indebtedness,
and as a part of said transaction, the presi-
dent and secretary of·the company are here-
by authorized and directed to execute and
deliver to said trustee the promissory note
and mortgage of the company, * * * which
said mortgage shall give to said trustee a
lien upon the real estate, leasehold, and

equipment belonging to the company (de-
scribing same) * * * to be delivered, to the
trustee upon production of the receipts for
the payment of the $12,000 indebtedness, and
said mortgage shall provide and show who
the beneficiaries are under said trust, and
the respective amounts of their interest as
representing and showing the amount paid
in by him or them."

Defendant, among other things, testified:

"They said they were shut down and we
couldn't run the mill, they owed about $12,-
000, and unless we could raise that, the mill
would be sold, and it was talked about and
we thought we could raise that money and
lift the debts so we could run the mill. * * *
There was talk that the stockholders would
all throw in.* * *   We was to raise $12,000,
and if we could not raise it, I was to re-
turn that money back, and Mr. Hivick sug-
gested to let me go and pay this.   * * * Mr.
Hivick gave me a check for $1,500 and Mr.
Smith gave me his check for $500. * * * If
we couldn't raise it, each one was to get
it back, but every person that subscribed to
this was to get a note with eight per cent.
interest. * * *   I was appointed trustee be-
fore I was appointed director."

Pursuant thereto, other stockholders paid
defendant certain sums which, together with
the payments of plaintiff and Smith, aggre-
gated $3,520.   Plaintiff and Smith retired
as directors, and defendant was elected pres-
ident and director on the same day the fore-
going arrangement was made for saving the
property by liquidating the indebtedness. De-
fendant seems to have undertaken thereafter
to operate said mill for a number of months,
during which time certain other indebtedness
was incurred.   He advanced the balance of
the $12,000 himself.   Instead of paying and
discharging the indebtedness referred to in
said resolution, he purchased same, causing
the liens to be assigned to himself.   C. .
Matthews Lumber Company sued Producers
Lead & Zinc Company in the district court
of Ottawa county, where· the property was,
seeking foreclosure of lien for material. De-
fendant purchased that indebtedness and
caused the lien to be assigned to himself, and
by order of the court was substituted as
plaintiff in that case.   Thereafter, he pros-
ecuted same to judgment, and on this and
other liens purchased by him and referred
to in said resolution, procured judgments
against the company and sold the entire plant
and property on execution.   At the time the
trust agreement was made, the company was
indebted to plaintiff, Hivick, for about $20,-
000 for cash loaned by him to the company.
He took a mortgage on the property junior to
the liens to be paid under said resolution.
On said foreclosure by defendant, the prop-

erty did not bring sufficient to pay all indebtedness, and the court prorated the proceeds of the sale between plaintiff on his second mortgage and defendant, on certain of the liens which he had purchased so as aforesaid. Plaintiff thereafter brought this action against defendant for the $1,500, which he had so paid to defendant, and the $500, so paid by Smith, and his claim therefor assigned to plaintiff, and interest. On trial to a jury, a verdict was rendered for plaintiff for $2,500. Instead of entering judgment on the verdict, the court granted a new trial to defendant, not specifying ground therefor. From such order granting such new trial, plaintiff prosecutes error. It is assigned that the court erred in sustaining said motion for new trial and setting aside the verdict of the jury, because under defendant's own evidence and the undisputed facts, defendant was liable as matter of law for the amount awarded by the jury.

1. Under the undisputed facts, including defendant's own testimony, he breached his trust agreement. The record does not show that he did so willfully or with fraudulent intent. He accepted the money as part of a trust fund. As a trustee thereof, under his own testimony, he could do only one of two things—he could use this $2,000, together with other funds, to discharge the specific liens on the property for the payment of which such trust fund was created, or repay the trust fund to the trustors.

In Davis v. Hoffman (Mo.) 67 S. W. 236, dealing with a breach of trust, it is said:

"He misappropriated it and therefore he is liable for the whole of it, and it is immaterial how he spent it or who benefited by it. In equity he received it as trustee and has not spent it for the trust purposes, and therefore it is treated as if it was still in his hands, and he cannot say it was not."

In Pom. Eq. Jur. (3rd Ed.) section 1080, it is said:

"The trustee's personal liability to make compensation for the loss occasioned by the breach of trust, is a simple contract equitable debt."

The same author (3rd Ed.) section 1079, says:

"It might be supposed that the term 'breach of trust' was confined to willful and fraudulent acts which have a quasi criminal character, even if they have not been made actual crimes by statute. The term has, however, a broader and more technical meaning. It is well settled that every violation by a trustee of a duty which equity lays upon him, whether willful and fraudulent, or done through negligence or arising through mere oversight or forgetfulness, is a breach of duty. Comingor v. Louisville Trust Co., 108 S. W. 950, 128 Ky. 697, 129 Am. St. Rep. 322."

2. Defendant pleaded and sought to prove that he as trustee was to discharge said indebtedness as soon as sufficient money was in his hands. This is no defense, for his duty was to return this fund if its insufficiency worked failure of the purposes of the trust. Nor is it a defense that he advanced a large part of the trust fund. He did not carry out the trust agreement even with the use of his own money. Defendant raises one issue that might have been a defense—that plaintiff agreed, after the fund was placed in his hands, that defendant might use the money as he did. To prove this, he introduced a letter showing that plaintiff agreed that defendant might use the funds to "pay off the McNeal machinery claim". This was one of the very purposes for which the fund had been created and for which defendant had accepted the trust. It was not a modification or waiver of the agreement, or of any duty of defendant in the execution of the trust. Instead of paying the McNeal claim, defendant went to Joplin, Mo., and bought the claim, amounting to several thousand dollars, and had the lien assigned to himself and liquidated the same through said foreclosure, as the owner thereof. In fact, in his answer, defendant admitted that he had foreclosed all of said liens as the owner thereof in said district court. He also alleged that the aliquot part of the proceeds of the sale of the property, which he received, was less than he had expended for attorney fees, expenses, commissions, and the like—showing that he had lost money by the venture. Since he did not execute, or attempt to execute, his trust, he could not ask to be recouped out of the trust fund for any of these expenses. This is elementary. Defendant also set up that he had been sued by the Quapaw Supply Company; that that company had procured judgment against him, later being affirmed by the Supreme Court, and that he had to pay the same, and that same was payable out of the $12,000 fund. The trust fund was not created to pay judgments but to save the property of the company from such suits by paying the claims. Whatever defendant did or paid in this matter was not in pursuance of his trust, but in derogation thereof. Defendant also alleged that Smith had collected funds from other subscribers to said indebtedness and had not turned same over to defendant. There is no evidence to support this, and if there were, it would be no defense. The answer of defendant, for

the most part, set up his own breach of trust. As held in Kerr v. Blodgett (N. Y.) 16 Abb. Prac. 137, 145:

"The breach of trust is a wrong, and a constructive fraud upon the cestui que trust. A trustee cannot take advantage of his own wrong by setting up his own breach of trust."

3. Defendant also pleaded and contends that plaintiff's cause of action was barred by the three years' statute of limitations. This suit was filed on July 16, 1923. Plaintiff testified that on July 13, 1920, when plaintiff received his prorated share of the proceeds of the foreclosure sale of the property, he asked the defendant to pay the money here involved, and that defendant agreed to send same to plaintiff soon, and never did so. Defendant denied this conversation in toto, and stated that he had not received his share of the proceeds of such sale until about three weeks thereafter, which would be within three years of the filing of this suit. The decisive fact in this behalf is that defendant did not testify to any act or word by which he repudiated said trust, on July 13, 1920, or at any time prior to the bringing of this action by plaintiff. In Mason v. MacFadden, 298 Fed. 384, it is held:

"Laches may be imputed to the beneficiary of a trust because of delay in bringing suit for its enforcement after it has been expressly repudiated by the trustee."

In that opinion, it is said:

"The doctrine of laches would not apply as long as the trust relationship existed, but where there is a repudiation of the trust, the door to the defense of laches opens." Citing Speidel v. Henrici, 120 U. S. 377, 30 L. Ed. 718: Riddle v. Whitehill, 135 U. S. 621, 34 L. Ed. 283; Patterson v. Hewitt, 195 U. S. 309, 49 L. Ed. 214.

In Sumid et al. v. Cairns (Ariz.) 220 Pac. 1084, it is held:

"Where land was conveyed to defendant on an express oral agreement to hold it in trust for plaintiff, a holding adverse thereunder can be converted into one adverse to plaintiff, starting limitations against a suit to establish and enforce the trust, only by a clear and unequivocal declaration of such intention brought to plaintiff's attention.

"Mere failure of trustee to respond to repeated inquiries by cestui que trust is not notice of clear and unequivocal repudiation of trust necessary to start running of statute against suit to establish and enforce an express trust."

It thus appears, likewise, under all the evidence, including defendant's own testimony, that the statute of limitations had not run against plaintiff's action.

4. It is well settled that unless the record discloses that the order of the trial court in granting a new trial is based on an erroneous view of some pure unmixed question of law, the same will not be disturbed on appeal. McLaurin v. People's State Bank of Coyle, 95 Okla. 6, 217 Pac. 187. We conclude that the trial court, in granting new trial and setting aside the verdict of the jury in the instant case, did so err, as to a pure unmixed question of law so as aforesaid. Under this record, the court could not grant a new trial on the alleged misconduct of attorney for plaintiff involving certain statements made in argument to the jury. If true, the result would not be changed. While plaintiff was not entitled to judgment on the pleadings, he was entitled to judgment on the verdict at the conclusion of all the testimony. Under this state of the record, the liberal rule as to discretion of the court in granting new trials, is not applicable.

The cause is reversed and remanded, with directions to set aside the order granting new trial, and to render judgment on the verdict for plaintiff.

By the Court: It is so ordered.

Note.—See under (1) 39 Cyc. p. 431. (2) 21 C. J. p. 183 § 164; 26 C. J. p. 1061 § 4. (3) 37 C. J. p. 903 § 267: p. 924 § 294. (4) 4 C. J. pp. 830. 832 § 2813; p. 833 § 2814.