### LINDSAY, Adm'x, v. BRITT.

No. 18522. Opinion Filed Sept. 17, 1929.

Ben F. Williams, John E. Luttrell, and Hardin Ballard, for plaintiff in error.

Hardie & Grim, for defendant in error.

LEACH, C. This action was commenced in the district court of Cleveland county by Sarah H. Lindsay, the mother of William H. Lindsay, deceased, and administratrix of his estate, against W. A. Britt, to enforce an alleged trust and recover legal title to a cemetery lot. In the year 1924, William H. Lindsay was in poor health which affected both his body and mind; while he and his wife, Hattie Britt Lindsay, were residing with the parents of the latter at the home of the defendant, William A. Britt, the wife became sick and died in the latter part of said year and was buried in the northwest corner of the cemetery lot here involved. On the death of the wife, her father, the defendant, acting through his son and another party, selected and apparently bargained for the lot involved in this action, which is a plot of ground 20 feet square, sufficient on which to bury eight persons, and a deed was issued and delivered to defendant therefor.

A statement of the cost of such lot, $75, was included by the undertaker in his bill and statement of cost of the funeral of the deceased wife, and the bill was paid by check signed by William H. Lindsay and satisfied out of funds belonging to him and derived from the proceeds of a life insurance policy on the life of his said deceased wife. It was alleged and testified to by defendant that he purchased the lot in question as a family burial plot and intended to personally pay for the same and did offer and tender pay therefor; that subsequent to the death of his wife the said William H. Lindsay was committed to the hospital for insane where he died in January, 1926, without issue, and was buried beside his wife; thereafter this action was instituted, and upon a trial of the issue, a judgment was

entered by the court vesting the title to the northwest quarter of the lot in question in the estates of Hattie B. Lindsay and William H. Lindsay, deceased, jointly, and it was further decreed that the parties to the action, or either of them, should have the right to construct on the northwest quarter of the lot such suitable monument as to them seemed appropriate, and in the event they were unable to agree upon a single monument, then each might erect a monument at the grave of their respective children, and they were empowered to plant and maintain such shrubbery and flowers to the memory of their respective children as to them should seem suitable and appropriate, without hindrance from the other, from which judgment the plaintiff brings this appeal, and, as ground for reversal, alleges and contends that the judgment is contrary to the law and the evidence; that the undisputed facts are sufficient to establish a resulting or constructive trust to the entire lot in the defendant, and that he should be adjudged to hold title thereto for the estate of William H. Lindsay, and directed to convey the same accordingly.

Quoting from plaintiff's brief, it is therein said:

"Plaintiff has no intention or desire to in anyway exclude the defendant or the other relatives of Hattie Britt Lindsay from their proper attention to the last resting place of Hattie Britt Lindsay. She does not ask for the property for herself, but only desires that the entire title to the lot in question be vested in the estate of William H. Lindsay, and that no other person be buried upon this lot, the burial place of the family of William H. Lindsay; that it be dedicated solely and exclusively as the last resting place of these two people."

Defendant testified:

"I have no desire whatever and have no intent to interfere with their doing anything they want done in the way of flowers and anything of that sort that they want to put on there. I just simply want the title to the lot so that I can use it for my own family. That is what I bought it for."

From the statements of the parties litigant, it would appear that the principal matter here in dispute between them is the title to three-fourths of the lot in question.

Pomeroy's Equity Jurisprudence (4th Ed.), section 155, in speaking of trusts, such as is here sought to be established, says:

"The second great division of trusts and the one which in this country especially affords the widest field for the jurisdiction of equity in granting its special remedies so superior to mere recoveries of damages, embraces those which arise by operation of law from the deeds, wills, acts, contracts, or conduct of parties without any express intention, but always without any words of declaration or creation. They are two species, 'resulting' and 'constructive,' which later are sometimes called trust ex maleficio; and both these species are properly described by the generic term 'implied trusts' * * *"

—and thereafter follows a statement of the author as to when and under what circumstances such trusts arise.

In the following cases and language, this court defined resulting and constructive trusts and the measure of proof necessary to establish the same:

"2. Constructive trusts are such as are raised by equity in respect of property which has been acquired by fraud, or where though acquired without fraud, it is against equity that it should be retained by him who holds it.

"3. A resulting or implied trust is one which arises where the legal estate in property is disposed of, conveyed, or transferred, but the intent appears or is inferred from the disposition or from the accompanying facts and circumstances that the beneficial interest is not to go or be enjoyed with the legal title. It may result from the fact that one man's money has been invested in land and the conveyance taken in the name of another or from other circumstances where intention is an essential element." Rollow v. Taylor, 104 Okla. 275, 231 Pac. 224.

"3. A resulting trust is that such a trust can arise only in favor of a person who claims to have furnished the consideration money, when such consideration, or some aliquot part thereof, was furnished as part of the original transaction at the time the purchase was made." Boles v. Akers, 116 Okla. 266, 244 Pac. 182.

See, also, Bryant v. Mahan, 130 Okla. 67, 264 Pac. 811; Teuscher v. Gragg, 136 Okla. 129, 276 Pac. 753.

"2. A constructive trust may be established by parol evidence, but the law for the safety of titles requires that the proof should be of the most satisfactory and trustworthy kind. The onus of establishing a constructive trust rests upon him who seeks its enforcement, and before a court of equity will be warranted in making a decree therefor, the evidence must be clear, unequivocal, and decisive." Hayden v. Dannenberg, 42 Okla. 776, 143 Pac. 859.

The court in the body of the opinion in the case of Craig, Ex'x, v. Craig, 114 Okla. 302, 247 Pac. 67, after quoting from the case of Hayden v. Dannenberg, supra, and Bab-

cock v. Collison, 73 Okla. 232, 175 Pac. 762, said:

"The authorities seem to be uniform in holding that one who seeks to establish the existence of a constructive or resulting trust, must do so by clear and unequivocal evidence."

We agree with the statement and argument of the plaintiff that it is the legal right and duty of a surviving husband to bury his deceased wife, but it does not appear under the record here presented that such right or duty was denied or avoided.

We think it reasonably appears from the record that the lot in question was selected and bargained for by the defendant, or under his direction, with the intent on his part to personally pay for the same and to own and use the same as a family burial ground, with the intent to inter therein the body of his deceased daughter and her husband, William H. Lindsay, whom he considered a part of the family, as was so testified to by defendant; and it does not appear that there was any intent, agreement, or understanding between the parties interested in the burial of the deceased wife to take or acquire title to the lot for or on behalf of the husband at the time the lot was selected.

The undertaker who had charge of the burial of Hattie B. Lindsay, deceased, was a brother-in-law of the husband of such deceased, and apparently, without the advice or request from anyone, voluntarily included the cost price of the cemetery lot in the burial expenses. He was asked if that was the usual and customary thing to do, and he replied:

"Well, ordinarily it was not, but with these two, with whom we were well acquainted, we merely got the bill and kept the entire funeral expenses. confined to one bill."

The funeral bill was directed by William H. Lindsay to be delivered or referred to his friend and advisor, a Mr. Hutto, for his inspection, who, after examining the same, filled in a check for the amount, which check was signed by Lindsay. There was nothing in the record from which it would appear that the defendant had any notice or knowledge that William H. Lindsay intended to, or had paid for, the lot until his representative offered and tendered the amount of the purchase price to the undertaker who was then advised that the lot had already been paid for and the deed issued to the defendant. Defendant paid to the cemetery association or its caretaker for the upkeep of the lot the sum of $25, and made tender of the cost of the lot in his answer filed in the cause.

We are not unmindful of the provisions of section 8463, C. O. S. 1921, to the effect that a trust is presumed to result in favor of one who pays the consideration for real estate, the title to which is transferred to another, but such mere presumption may be overcome by evidence, and if the facts herein presented be sufficient to come within the purview of such statute, then, from a consideration of all the facts and circumstances of the case, we are of the opinion that the presumption is not supported or sustained beyond the relief and judgment granted. Helvie v. Hoover, 11 Okla. 687, 69 Pac. 958.

We fail to find any fraud, either actual or constructive, on the part of the defendant, or a breach of any fiduciary relation to William H. Lindsay, deceased, or his estate, sufficient to establish a constructive trust to that part of the lot not changed or affected by the decree of the trial court.

It is said in the case of Cassidy, Adm'x, v. Hornor, 86 Okla. 220, 208 Pac. 775, that:

"Constructive trusts are raised by equity for the purpose of working out right and justice, where there was no intention of the party to create such a relation."

If the facts in the instant case be such as to justify relief through equity, then we think that the demands of equity have been sufficiently met in the judgment of the trial court, and that right and justice have been done, except and unless it be in the matter of payment of a portion of the purchase price of the lot involved. The defendant makes tender in his answer of the price of such lot, and while the plaintiff does not ask for recovery of any part of the purchase price, nevertheless, under the rule in equity cases, the court has power to do and render complete equity and relief between the parties and the appellate court has the duty and power to consider the whole record and render or cause to be rendered such judgment as the trial court should have rendered. Bunte v. Hasley, 122 Okla. 81, 251 Pac. 591; Fontenot v. White, 115 Okla. 248, 242 Pac. 854.

Under the record presented, we are of the opinion that it would be just and equitable that three-fourths of the cost of the lot in question be repaid to the estate of William H. Lindsay, deceased, and the judgment appealed from is modified or enlarged to the extent that plaintiff is decreed judgment

against the defendant for three-fourths of the price of such lot, amounting to the sum of $56.25, and a lien is awarded plaintiff for such sum on the defendant's undisturbed interest in the lot, and the trial court is directed to modify its judgment accordingly.

We have reviewed and considered the evidence in this case in the light of the authorities and decisions cited by the respective parties in their briefs, and other authorities, and conclude and are of the opinion that the judgment complained of is not against the clear weight of the evidence, and, therefore, under the well-established rule in such cases, the judgment, as modified, should be, and is, affirmed.

BENNETT, JEFFREY, REID, and FOSTER, Commissioners, concur.

By the Court: It is so ordered.