## McGANN v. McGANN, Adm'r.

No. 23593. Nov. 27, 1934.

Adam S. Garis, for plaintiff in error.

Wilson & Wilson, for defendant in error.

PER CURIAM. In the latter part of the year 1926 Mary McGann was the owner of 160 acres of land in Garfield county, Okla., which she had homesteaded when the Cherokee Strip was opened, and had owned since that time. She was a widow and lived around with her daughters and her three sons, though she spent more time with the defendant, James McGann, than with any of the others, and he had charge of her business. The farm was heavily mortgaged and the taxes were delinquent and foreclosure proceedings were about to be started. An

effort was made to find a purchaser and an offer was procured of a little over $2,000 for her equity. In this state of affairs, and on the 26th day of November, 1926, she made a general warranty deed to the land to James McGann, and he refinanced the mortgage, putting in the new mortgage 40 acres on which he lived and which was his homestead. Mary McGann died on the 29th day of March, 1929, and John E. McGann was appointed administrator of her estate on the 28th day of July, 1930, and on the 14th day of August, 1930, he filed this action as such administrator to declare and enforce a trust in the deed to James McGann for the use and benefit of the heirs and estate of Mary McGann. Although the action was purely equitable, a jury was demanded by the defendant and allowed by the court, and, upon the case being tried, the jury returned the following verdict:

"We, the jury impaneled and sworn to try the issues in the above-entitled cause, do, upon our oath, find for the plaintiff; that the deed in controversy was made, executed and delivered for the use and benefit of Mary McGann or her heirs."

The defendant, James McGann, filed a motion for judgment non obstante veredicto, which was overruled, and judgment rendered by the court in conformity with the verdict of the jury, and the defendant has appealed to this court.

Plaintiff in error, defendant below, pleaded the statute of frauds by way of answer, and set it up as ground of error on appeal, and has suggested it incidentally in his brief, though he does not seriously argue the question or cite authority in support of his contention. In the case of Boyd v. Winte, 65 Okla. 141, 164 P. 781, this court said:

"Resulting trusts are not within the statute of frauds, and may be established by parol evidence."

This has been so repeatedly held by this court that it is not even open to question. See, also, Tolon v. Johnson, 104 Okla. 201, 230 P. 865, and Bryant v. Mahan, 130 Okla. 67, 264 P. 811, and cases cited in these two opinions.

Three questions seem to be raised and specially relied upon in the brief of plaintiff in error.

1. That certain recitals in the order of the trial court vacating a temporary restraining order constituted an adjudication in favor of the defendant on the merits of the main action.

2. That the action is barred by the two-year statute of limitation.

3. That the judgment is not supported by the evidence.

We shall note these objections in order.

At the same time, with the filing of the petition, there was filed an application for an order enjoining and restraining the defendant from coming onto the land in controversy or interfering with the plaintiff's possession. A temporary restraining order was issued without notice, and on the 21st day of August, 1930, the defendant filed his motion to vacate said restraining order, and on the next day the court made and entered his order setting aside his temporary order. The material part of this last-mentioned order is as follows:

"The court declines to hear the evidence and finds that said restraining order should be recalled, dissolved, vacated, set aside and held for naught for the reasons following:

"(1) Because no bond was given or approved, and because the petition discloses that defendant is the record owner of the land and because plaintiff has no capacity to maintain the action.

"It is therefore considered, ordered, adjudged and decreed by the court that the restraining order heretofore issued by this court on the 18th day of August, 1930, be and the same is hereby recalled, dissolved, vacated, set aside and held for naught."

Defendant contends that this order was an adjudication on the merits to the effect that the plaintiff was without capacity to maintain the action, and that the defendant was the owner of the land in controversy, and insists that the trial court should have dismissed the action when no appeal was perfected from this order.

It is immaterial here whether the temporary restraining order should have been issued in the beginning or whether it ought to have been set aside. It will be noted that the statements of the order with respect to capacity to sue and to the ownership of the land in controversy were merely recitation by the court of his reasons for the making of the order which followed in the next paragraph of the journal entry, and these reasons were, at least, in part erroneous, as the plaintiff unquestionably had capacity as administrator to maintain the action. The interlocutory order quoted of August 22nd in no sense purported on its face to be a judgment on the merits, nor to adjudicate anything except to set aside the temporary

restraining order alone. In the case of Severs v. Northern Trust Company, 1 Ind. Ter. 1, the Territorial Supreme Court said:

"The reasons announced by the court to sustain its decision constitute no part of the judgment."

In discussing the effect of the dissolution of a temporary injunction by interlocutory order upon motion, and whether the order dissolving was binding upon the court on later trial on the merits, the court, in the case of Banks v. American Tract Society, 4 Sandf. Ch. (N. Y.) 438, said:

"It does not conclude him, nor does it conclude any judge from holding at the final hearing of the cause, on the same facts, that the complainants are entitled to the relief which they seek by their bill, by a perpetual injunction, or otherwise. An order of the court made upon a motion, is not res adjudicata in other sense than that which I have stated. It does not conclude the court as to points of law involved in its decision, whether arising in the same cause or in another."

The contention of defendant that, without even hearing evidence, erroneous reasons (or even reasons sound at that time) given for making an interlocutory order, would carry over and adjudicate the merits of the case on the facts or bind the court on final hearing to the legal theories at that time expressed, is unsupported by authority and is entirely without merit.

Defendant further pleads and relies upon subdivision 3 of section 101 of 1931 Oklahoma Statutes, in bar of the bringing of the action. This statute provides a two-year limitation for the bringing of "an action for relief on the grounds of fraud", and defendant contends that since the action was not brought within two years from the putting of his deed to record, it is barred by this statute. No other fact except the recording of the deed was shown or relied upon by defendant to bring notice to Mary McGann or her heirs of his repudiation of his trust, or to start the running of limitation. The putting by the defendant of his deed to record was consistent with and was in line with the performance of his trust, and was therefore not such notice of repudiation of his trust as to start the running of limitation in his favor. It is a well established rule that limitation does not begin to run against an action to enforce a resulting trust until a clear repudiation by the trustee of his trust is brought to the knowledge of the cestui que trust. (See Hivick v. Hemme, 118 Okla. 169, 247 P. 692.) In discussing limita-

tion as applied to resulting trusts, in 37 C. J., at page 908, it is said:

"The statute of limitations does not run in favor of the trustee of a resulting trust * * * until the trustee disavows the trust or asserts some right to the property inconsistent with it, and the cestui que trust has knowledge of such disavowal or assertion, or, from the circumstances, ought to have learned of it."

This court has not yet passed upon the question as to what limitation would apply to an action to enforce a resulting or constructive trust in real property, but such an action is not "an action for relief on the ground of fraud," and is at least not controlled by the two-year statute of limitation. Since the plaintiff's action here is not, as matter of fact, barred under any theory of limitation, or any possible applicable statute of limitation, this court will not decide as an academic question what statute would control if the question were presented, but will leave that question to be determined when it actually arises in a proper action.

With respect to the contention of defendant that the evidence is not sufficient to support the verdict of the jury and the judgment of the court, we will not review the evidence in any great detail. It is, of course, the general rule that the evidence to establish a constructive or resulting trust must be clear, satisfactory, and convincing. See Craig, Executrix, v. Craig, 114 Okla. 302, 247 P. 67, and Lindsay v. Britt, 138 Okla. 163, 280 P. 609. However, courts of equity will always scrutinize closely any transaction whereby a parent gains an advantage over his child of immature years, or whereby a son or daughter in the full bloom of his middle life gains an advantage as against his aged and infirm parent. See Daniel v. Tolon, 53 Okla. 666, 157 P. 756, Henderson v. Mainard, 84 Okla. 244, 200 P. 441. In 46 C. J., at page 1322, it is said:

"Where the parent is enfeebled in mind and body, from age or other cause, and in a situation rendering probable the exercise of undue influence on the part of the child, the burden of proof rests upon the child to show that the gift was the voluntary, intelligent act of the donor."

See, also, cases in the notes supporting this text.

The notary who took the acknowledgment to the deed in controversy was the only material witness offered by the defendant outside of his own testimony. The notary testified on cross-examination as follows:

"Q. She was an old woman? A. Yes, sir. Q. And a widow? A. Yes, sir. Q. And was decrepit and in poor health? A. Yes, sir."

The testimony of the notary was largely negative as he was not present when the agreement for the execution of the deed was made, but merely drew the deed and took the grantor's acknowledgment thereto, Except for this evidence, defendant's case rested almost entirely in his own parol testimony.

The defendant admits that he paid his mother no money or other thing of value at the time of the execution of the deed in question, but testified that she was indebted to him at the time in about the sum of $1,750, and that the cancellation of this indebtedness was the consideration for the deed. The other children testified that she owed him nothing, and the whole record would more nearly lead one to believe that all of the old woman's children were indebted to her than that she was indebted to any of them. Moreover, after taking the deed, defendant accepted contributions from the other children as their part of the burden of the trust estate, and made written reports to them showing expenses, rents and profits. He also made a written memorandum on a letter which was introduced in evidence, and which was consistent with the theory of trust in the land and inconsistent with his parol testimony on trial. In the case of Moore v. Grayson, 132 Cal. 602, the court said:

"The written admissions of a party before any controversy has arisen as to the meaning and effect of a contract, manifestly outweigh oral testimony in contradiction of the same, given after controversy has arisen."

In the case of Stevens v. Trask, 18 N. Y. Supp. 117, the court said:

"A judgment which rests solely upon the weight to be attached to the credibility and recollection of a party who is of course interested in the result, and who is contradicted by the party's own writings and conduct, should not be permitted to stand."

See, also, Kennedy v. Bank of Wall, 34 S. D. 457, 149 N. W. 168; In re Irvine's Estate, 102 Cal. 606; and Dowland v. Staley, 201 Ill. App. 6.

The rule announced by these authorities is sound, and when applied to this case, leaves the defendant nearly entirely stripped of showing to support his defense.

We have read the entire transcript of the testimony, and it is sufficient to say that there is not only enough evidence to support the verdict of the jury, but that the overwhelming weight thereof is against the defendant. If the verdict had been other than what it was, we would rather be inclined to overturn it as being against the weight of the evidence.

The judgment is affirmed.

The Supreme Court acknowledges the aid of District Judge E. A. Summers, who assisted in the preparation of this opinion. The District Judge's analysis of law and facts was assigned to a Justice of this court for examination and report. Thereafter, the opinion, as modified, was adopted by the court.