No. 20,700.

G. W. MASTERSON, *Appellee*, v. MARK MASTERSON and DOT MASTERSON, *Appellants*.

SYLLABUS BY THE COURT.

MAINTENANCE AND SUPPORT—*Contract Between Uncle and Nephew—Partial Performance—Equitable Judgment.* Where an uncle enters into an agreement that a nephew is to live with him and care for him during his life and in return is to receive his property at his death, and the arrangement is acted upon for a time and then abandoned for reasons not chargeable to one party more than to the other, the nephew upon a settlement should receive some compensation for his services already rendered, and in the absence of circumstances suggesting a different basis may be allowed the proportion of the value of the property that the time the contract was in force bears to that period with the addition of the then remaining life expectancy of the uncle.

Appeal from Franklin district court; CHARLES A. SMART, judge. Opinion filed March 10, 1917. Modified.

W. R. Hazen, and H. W. Page, both of Topeka, for the appellants.

Ralph E. Page, and Curtis M. Oakes, both of Ottawa, for the appellee.

The opinion of the court was delivered by

MASON, J.: A proposition was made by G. W. Masterson, a widower, seventy-two years of age, that if his nephew, Mark Masterson, and his wife would move to his farm and provide a home for him during his life he would give him eighty acres of it, subject to a mortgage of $2000, and a half interest in the remainder. The proposition was accepted, but the uncle shortly traded his farm for one of eighty acres, the title to which he took in himself and his nephew, and the arrangement was modified accordingly, the understanding being that the uncle should be furnished with a home during his lifetime, and should leave his property by will to his nephew. This agreement was acted upon for a year and three or four months. In March, 1913, the nephew and his wife moved to the farm, he leaving a position where he was earning $70 a month, and she giving up a millinery business in which she was making from $500 to $600 a year. The farm was operated in 1913 at a loss, and $800 of the uncle's money and some of the nephew's was expended without return except as a living for the family was provided. In the fall of 1913 they moved to the nephew's old home, where he resumed his former employment. In the summer of 1914 disagreements arose, as a result of which the uncle no longer lived with his nephew and his wife, and the contract was regarded as at an end. The uncle brought an action to quiet his title to the farm and was given a judgment as asked. The nephew and niece appeal. They concede that the court was justified in restoring to the plaintiff the title to the farm, inasmuch as the further carrying out of the contract had become impracticable. But they insist that upon equitable principles some compensation should have been provided for what they had already done under it.

The findings of fact made by the trial court are not challenged. In addition to the matters already stated they show that the disturbance which made it out of the question for the three persons concerned to live together in one home was

probably chargeable as much to one of the parties as to the other, and that from September, 1914, they all seemed to consider the contract at an end, and their trouble arose over the question as to how the matter should be settled; that the defendants, on their return to their home, were in about the same condition financially as when they left it, while during the residence on the farm the plaintiff had expended about $800, of a part of which, however, he had the personal benefit; and that the farm is worth from $4800 to $5200, and is incumbered for about $2100.

Where a contract of the general character of that here involved is acted upon for a considerable period the party who has expended time, effort and money in caring for the other is generally held to be entitled in equity to some compensation upon a rescission, even if his own misconduct is responsible for the agreement not being fully carried out. (*Holland v. Holland,* 97 Kan. 169, 155 Pac. 5; *Simmons v. Shafer,* 98 Kan. 725, 160 Pac. 199.) Ordinarily the judgment of the trial court is practically final as to the basis upon which the rights of the parties are to be adjusted in such a situation as that here presented. But in this instance the findings of fact are so full that this court has substantially an equal opportunity to apply to them the legal and equitable principles which it regards as controlling. The contract was substantially that the nephew should live with and care for his uncle until his death, and should receive the farm in return for so doing. He did live with him and care for him for a year and three or four months. Then the contract was abandoned for reasons not chargeable to one party more than to the other. We think the nephew should receive something in return for the services he rendered while the contract was in force, and that a natural way of fixing the amount is to compare what he actually did with what he would have been required to do to earn the reward promised for the full performance of the agreemnt. If he had cared for his uncle until his death he would have received land worth between $2700 and $3100 over the incumbrance. He cared for him for a year and three or four months. At the time the contract was abandoned the uncle was about seventy-three years old, and his expectancy of life was about seven years.

The nephew had, therefore, presumably accomplished from one-sixth to one-seventh of his allotted task. We think that $450 is a fair estimate of what he ought to receive.

The judgment is modified by giving the defendants a lien for that amount on the farm, payable at the death of the plaintiff.