STATON et al. v. MOODY et al.

MOODY v. STATON et al.

Nos. 34534, 34527.   Dec. 16, 1952.

Rehearing Denied April 28, 1953.

256 P. 2d 409.

W. H. Brown, Paul G. Darrough, and Virgil R. Ball, Oklahoma City, for Loreta Staton and others.

Rex H. Holden, W. T. Brunson, and Charles E. Dierker, Oklahoma City, for Bernice Opal Moody and others.

JOHNSON, J. These two causes, No. 34534 and No. 34527, stem from a dispute as to the legal and proper disposition of the estate of Elizabeth Decker, deceased. No. 34527 was brought in the district court of Oklahoma county by Bernice Opal Moody, administratrix, with the will annexed, of the estate of Elizabeth Decker et al. against Loreta Staton, as administratrix of the estate of Anna Maude White, also known as Maude White et al.

Plaintiffs alleged that Loreta Staton was the administratrix of the estate of Anna Maude White and that the other defendants, Loreta Staton, Edwina Mc-Curtain, W. E. White, Juanita Goldsby, Nedra Hudson, J. W. White and Neil White were the sole and surviving heirs at law of the deceased, Anna Maude White; that plaintiff Bernice Opal Moody was the duly appointed administratrix with the will annexed of the estate of Elizabeth Decker, deceased; that Bernice Opal Moody and Grace Elizabeth McGarvie were the sole residuary legatees under the last will and testament of Elizabeth Decker, deceased; that same was duly admitted to probate in the county court of Oklahoma county, Oklahoma, without a contest; that by reason thereof the property hereinafter described passed to the residuary legatees; that Anna Maude White died on or about the 6th day of March, 1946, and Elizabeth Decker died on the 5th day of September, 1947; that Anna Maude White was Mrs. Decker's niece; that Mrs. Decker had considerable means; that Mrs. White was without means or income and lived with Mrs. Decker, who furnished all living expenses and funds for both; that Mrs. White had access to Mrs. Decker's property and money, with the right to check on her bank accounts; that on the 21st day of May, 1945, Mrs. White purchased with Mrs. Decker's money, a duplex located on lot 17, block 15, Terrace addition to Oklahoma City, Oklahoma, taking the legal title in Mrs. White's name; that no part of the purchase price was paid by Mrs. White; that by reason thereof plaintiffs are the legal and equitable owners of said property and entitled to the possession thereof and to have title quieted in them. That immediately after Mrs. White's death, the defendants evicted Mrs. Decker from the duplex (property); that defendants have ever since occupied and retained possession of said property.

Plaintiffs prayed for an accounting of the rents and profits, or, in the alternative, the reasonable usable value of the property.

A demurrer to this petition as amended was overruled with exception. Defendants then filed their joint answer, admitting the death of their mother, Mrs. White, and Mrs. Decker, as alleged, and that they were the sole heirs of Mrs. White.

Answering further they stated that Elizabeth Decker, for many years, resided in Juneau, Alaska, and owned considerable property there; that she had no relatives or close friends living near her and for many years she constantly sought to get Maude White, her niece, to come to Alaska and live with her and help take care of her and her property; that Mrs. Decker was practically incapacitated from attending to her housework and her business affairs and being so handicapped she insisted continually that Mrs. White come to her; that if she would do so she would leave her all of her estate except a few minor bequests; that Mrs. White was finally persuaded to leave her family and kindred in Oklahoma and went to live with Mrs. Decker; that for many years thereafter she was in almost constant attendance upon her, looking after her personal wants and assisting her in taking care of her property with the exception of an interval when she returned to Oklahoma for a

short time; that to confirm the understanding and agreement had with Mrs. White, Mrs. Decker duly executed her last will and testament leaving practically all af her estate to Mrs. White with the exception of small bequests to other relatives aggregating approximately $6,000; that a copy of said will was given to Mrs. White as evidence of the agreement between them; that the physical condition of Mrs. Decker grew worse as the years went by requiring more personal attention; that after several years, Mrs. Decker disposed of her tangible property in Alaska, and thinking that it might improve her health they came to Oklahoma in 1944; that Mrs. White fully and completely performed and carried out all the terms and conditions of the agreement with Mrs. Decker; that Mrs. Decker, in recognition thereof, upon returning to Oklahoma, arranged for the purchase of the real estate involved herein and the payment of a part of the purchase price thereof, having title thereto taken in the name of Mrs. White; that the same was done as a partial performance of their prior agreement; that Mrs. Decker had full knowledge of all the facts concerning the acquisition of this property and acquiesced and consented thereto. They prayed that plaintiffs take nothing.

Plaintiffs, in cause No. 34534 were the defendants in cause No. 34527, and defendants in No. 34534 were plaintiffs in No. 34527.

The allegations in plaintiffs' petition in cause No. 34534, are, in effect and substance, the same as their answer in cause No. 34527 except that they claim the enitre estate of Mrs. Decker less the minor bequests provided for in her last will and testament in favor of Mrs. White, which they contend was made in accordance with the contract between Mrs. Decker and Mrs. White referred to in their answer in No. 34527, a copy of which was attached to their petition. They prayed for judgment against the defendants and each of them for the sum of $96,685.61, this being the alleged aggregate value of Mrs. Decker's estate, together with interest at 6 per cent per annum until paid and all costs or, in the alternative, that plaintiff recover judgment for a similar amount against defendants upon the claim for services rendered Mrs. Decker by Mrs. White and filed against the estate of Mrs. Decker, deceased, but which was disallowed and for such other relief as they may be entitled.

The defendants' answer was in effect a denial of the material allegations of plaintiffs' petition.

The causes were consolidated and tried by the court.

Cause No. 34527 was an action by plaintiffs, wherein they sought to impose a trust in their favor on the duplex that was occupied by Mrs. Decker and Mrs. White as their home, which was purchased in the name of Maude White about a year before Mrs. White's death. The sum of $5,000 was paid on the property from funds which were on deposit to the credit of Mrs. White in the Liberty National Bank of Oklahoma City, but which allegedly and in fact belonged to Mrs. Decker.

The plaintiffs relied upon parol evidence to establish a resulting trust in their favor.

A resulting trust may be established by parol evidence but the proof necessary to establish it should be of the most satisfactory kind, and the burden of establishing such trust rests upon him who seeks its enforcement, and before a court of equity will be warranted in making a decree therefor, the evidence must be clear, unequivocal and decisive. See Ward v. Ward, 197 Okla. 551, 172 P. 2d 978, and cases cited therein.

It is undisputed that the $5,000 paid allegedly from money belonging to Mrs. Decker was only a partial payment on the duplex and that Mrs. White alone gave a mortgage on it to a local loan company and obtained money to pay the balance of the purchase price to the seller, and also, that the part payment, if made from the money of

Mrs. Decker, was not shown to have been made for any distinct part or interest in the property.

We think the judgment of the trial court refusing to impose a trust upon the property (duplex) was justified under the rule that where property is conveyed to one person on a part consideration furnished by another and the purchaser alone gives a mortgage on the property purchased to obtain the balance of the purchase money which is paid to the seller, there is no resulting trust, and this is true even though the court based judgment upon other reasons. 54 Am. Jur. Trusts, §217, p. 167, Anno. 42 A.L.R. 52. Also, the trial court's judgment was proper for the further reason that a resulting trust does not exist in favor of one who pays part of the price of land conveyed to another unless such payment has been made for some distinct part or interest therein. McGowan v. McGowan, 14 Gray 119 (Mass.), 74 Am. Dec. 668, followed in Dudley v. Dudley, 176 Mass. 34, 56 N.E. 1010. See, also, Olcott v. Bynum, 17 Wall. 44, 21 L. Ed. 570.

In cause No. 34534, the plaintiffs alleged the existence of a contract between Mrs. Decker and Mrs. White, the substance of which was that Mrs. Decker agreed to make a will and leave all of her estate to Mrs. White except certain minor bequests if Mrs. White would come to Alaska and take care of her and her property which plaintiffs contend Mrs. White did.

Upon trial of the cause the court found inter alia that there was no contract entered into between Mrs. Decker, deceased, and Mrs. White, deceased, and that Mrs. Decker, during her lifetime, fully compensated Mrs. White for all services rendered to her by substantial gifts of money and property. From an order overruling plaintiffs' motion for a new trial, they appeal.

Plaintiffs, for reversal, present their contentions under three propositions, to wit: (1) There was a definite contract entered into between Mrs. Decker and Anna Maude White whereby Mrs. White was induced to go to Alaska and take care of Mrs. Decker; (2) that the contract was fully performed; (3) that specific performance of the contract should have been granted; (4a) errors of law occurring at the trial, and (4b) error of the court in holding that plaintiffs were not entitled to maintain this action; (5) alternative remedies suggested by plaintiffs.

It is evident from what has been said that this cause is to be determined by the application of equitable principles; therefore, we will examine and weigh the evidence, but unless the judgment of the trial court is against the clear weight thereof or contrary to law, it will be affirmed.

The material question is, Was the evidence sufficient to constitute a contract between Mrs. Decker and Mrs. White whereby Mrs. White was to be willed Mrs. Decker's estate as compensation for her services in caring for Mrs. Decker and her property during her lifetime? If so, then Mrs. White admittedly did not fully perform her contract owing to the fact that she died before Mrs. Decker. But, if she faithfully performed her part of such a contract until death prevented its full performance, we think that Mrs. White's administratrix first proving the contract, may recover the value of the service so performed up to date of her death, not by action upon the contract but upon a quantum meruit for services performed. Leahy v. Cheney, **90** Conn. 611, 98 A. 132; Torgerson v. Hauge, 34 N.D. 646, 159 N.W. 6, 3 A.L.R. 164; 57 Am. Jur., Wills, §175, p. 155; 69 A.L.R. Anno. p. 52 et seq.

It is argued and the trial court so held that the making of the contract alleged, and its terms, were not sufficiently established. We do not agree. Numerous disinterested, uncontradicted witnesses gave testimony sufficient to establish that there was an expressed intent and agreement by Mrs. Decker to give all of her property to Mrs. White as compensation for caring for her and looking after her property dur-

376

ing her lifetime. It is undisputed that Mrs. White, at Mrs. Decker's persistent requests, left her home and family in Oklahoma and went to live in Alaska with Mrs. Decker, a widow of many years, without issue, and so lived there for about four years; that during that time Mrs. Decker was an invalid and required Mrs. White's constant attention; that Mrs. Decker did, on February 3, 1941, make a will which was duly executed in the presence of witnesses and she delivered a copy to Mrs. White, in which will, after making some directions as to burial, etc., and several explicit minor bequests, she said:

"(h) I give, devise and bequeath all the remainder of my property, real, personal and mixed, of every nature and description and wheresoever situated, including the Decker Apartment Building, my home at Juneau, Alaska, and all furnishings and other property of every description, to my niece, Mrs. Anna Maude White Rogers, of Oklahoma City, Oklahoma."

It is undisputed that all of the property in Alaska was converted into cash and that Mrs. Decker and Mrs. White left Alaska and came to Oklahoma City and that Mrs. White continued her constant attention to the aged Mrs. Decker, whose health grew gradually worse; that during all the time Mrs. White waited upon and cared for Mrs. Decker she was in constant attendance through 24 hours each day for seven day a week. No complaint is now made by defendants, or was any complaint ever made by Mrs. Decker, as to the services rendered by Mrs. White to Mrs. Decker. The evidence discloses that for more than five years Mrs. White rendered services satisfactory to Mrs. Decker as alleged until she died, which was admittedly on March 6, 1946; that Mrs. Decker immediately thereafter went to live with her sister, Mrs. Johanna Margaret Moody, and her niece, Bernice Opal Moody, and so lived until her death on September 6, 1947; that on March 22, 1946, Mrs. Decker, while living with her sister and niece, and 16 days after the death of Mrs. White, executed a new will bequeathing and devising all of her estate to the defendants, the value of which was admittedly approximately $100,000; but left nothing to the estate of Mrs. White, or to her heirs or next of kin.

There was no daily, weekly, monthly or yearly amount of compensation to be paid Mrs. White by Mrs. Decker, but obviously Mrs. White, had she lived would have been entitled to the whole of Mrs. Decker's estate, but since her death stopped further performance on her part, her heirs may recover on a quantum meruit basis, her death excusing further performance on her part. The oral contract to leave all her property as compensation to Mrs. White was conclusively established by oral testimony and written exhibits consisting of numerous letters and the will in favor of Mrs. White. The delivery of the copy of the will to Mrs. White is an important factor, but not necessarily essential in establishing the contractual feature of the transaction between Mrs. White and Mrs. Decker. There was a valuable consideration as a consequence of Mrs. White's services resulting in an enforceable contract, so that the testator cannot, by making a later will, escape the obligation confirmed by the first one. See Nelson v. Schoonover, 89 Kan. 388, 131 P. 147.

Under the facts, this contract under which said will was executed and delivered was substantially performed and to such an extent that equity will grant relief appropriate to the established equitable principles.

The rule applicable to the facts and circumstances herein has been well stated in Torgerson v. Hauge, supra, wherein it was held that a will executed under such an agreement is both contractual and testamentary.

Its contractual features cannot be later revoked by the testator without the consent of the beneficiaries, where executed, and where equity should enforce its provisions. There in the sylla-

bus by the court, paragraphs one, two and three. it was said:

"1. The parents of Andrew Torgerson entered into an oral understanding with him in 1899, whereby he should reside with and care for them during their lives, and should receive their property. They executed and delivered to him their joint written will, constituting him sole devisee of all their property. Andrew purchased an adjoining quarter, sold his own homestead in another county, and for 15 years lived with his parents. Andrew died in June, 1914; the father in October following, at the age of 74 years. The mother was 74 years old at the time of the trial. Andrew leaves a widow and four minor children. Surviving him are these defendants, his four brothers and sisters and his mother. Six weeks after the death of Andrew his brothers and sisters procured the aged and enfeebled father and mother to make another will, revoking the former one and dividing all their property between themselves and the heirs of Andrew, one-fifth to each. The parents then leave and reside with the defendants. Andrew's widow protests, and offers to continue to support and care for them. The children of Andrew herein seek to enjoin the probate of the second will and maintain the status quo during the lifetime of the mother; and to define the estate of the minors in the real property and declare their interest therein a trust upon the fee thereof to be subsequently perfected by the probate of the first will or proceedings in equity; and to annul any pretended interest of the defendants under the purported second will, and to make suitable provisions meanwhile for the maintenance and care of the mother out of said homestead premises, title to which was acquired by final proof years ago, but subsequent to the delivery of the first will. Held, a will executed under such an agreement is both contractual and testamentary. Its contractual features cannot be later revoked by the testators without the consent of the beneficiaries where executed, and where equity should enforce its provisions.

"2. Under the facts this contract under which said will was executed and delivered was substantially performed, and to such an extent that equity will grant relief equivalent to specific performance and fasten a trust upon the property for the benefit of the heirs of the beneficiary under the contract as against any transferee or devisee.

"3. A will so executed will be recognized in equity as a part performance of the contract, and becomes itself in its contractual features an enforceable contract."

In the opinion, it was said, in effect, that Andrew Torgerson in his lifetime, under his contract with his parents and his partial performance thereof, acquired, and had at the time of his death, an equitable estate in the land in question, which would pass upon his death to his heirs or devisees, and which passed to his heirs, the plaintiffs.

These considerations lead us to the conclusion that the plaintiffs were entitled to relief, but not necessarily to the full amount claimed, nor to the full extent or amount of the estate, by the enforcement of the first will in favor of Mrs. White. Mrs. Decker by making such will did not necessarily incapacitate herself from making a later will which should be valid except so far as it should impinge upon her prior obligations.

The record discloses that Mrs. Moody and her daughter took Mrs. Decker into their home and kept her from the date of Mrs. White's death on March 6, 1946, until Mrs. Decker's death on September 6, 1947, evidently under the same conditions and circumstances as did Mrs. White. That is, they were to care for her the rest of her life, which they did, and but for Mrs. Decker's prior obligations to Mrs. White they would be entitled, under the second will, to the full amount of Mrs. Decker's estate, less certain minor bequests, as that was evidently the agreed amount of compensation.

The record further discloses that when Mrs. White agreed with Mrs. Decker to go to Alaska and take care of her, Mrs. Decker was 76 years old;

that under the American mortality table she had a life expectancy of 5.88 years; that Mrs. White left Oklahoma City for Alaska on September 25, 1940; that she performed services for Mrs. Decker until her death on March 6, 1946; that the Moodys performed the same services for Mrs. Decker under the same circumstances from the date of Mrs. White's death until the death of Mrs. Decker. Under this state of facts we think plaintiffs should recover on a quantum meruit basis for the services rendered by Mrs. White and that we should reverse the judgment rendered and remand the cause, with directions for such determination.

Under the arrangements, or agreements, that the devisees, under each will, had with Mrs. Decker to receive the entire amount of her estate in case they cared for her until her death, each, we think. is entitled to compensation for services rendered.

See Masterson v. Masterson, 100 Kan. 108, 163 P. 617, and cases cited therein. In that case the court said:

"The contract was substantially that the nephew should live with and care for his uncle until his death, and should receive the farm in return for so doing. He did live with him and care for him for a year and three or four months. Then the contract was abandoned for reasons not chargeable to one party more than to the other. We think the nephew should receive something in return for the services he rendered while the contract was in force, and that a natural way of fixing the amount is to compare what he actually did with what he would have been required to do to earn the reward promised for the full performance of the agreement. If he had cared for his uncle until his death, he would have received land worth between $2,700 and $3,100 over the incumbrance. He cared for him for a year and three or four months. At the time the contract was abandoned the uncle was about 73 years old and his expectancy of life was about 7 years. The nephew had therefore presumably accomplished from one-sixth to one-seventh of his allotted task. We think

that $450 is a fair estimate of what he ought to receive."

After a careful examination of the voluminous record herein and the inexhaustive briefs of the parties, we have carefully weighed the evidence and find the judgment of the trial court to be against the clear weight thereof and contrary to law. Therefore, cause No. 34534 is reversed and remanded, with directions for further proceedings in accord with the views herein expressed.

There are other questions raised by the parties herein, but from what we have said, we deem it unnecessary to discuss them.

ARNOLD, C.J., HALLEY, V.C.J., and WELCH, CORN, GIBSON, O'NEAL, and BINGAMAN, JJ., concur. DAVISON, J., dissents.

DAVISON, J. (dissenting). I am of the opinion that the judgment of the trial court in cause No. 34534 is not against the clear weight of the evidence and that said judgment should be affirmed. I, therefore, respectfully dissent.